UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUAN CUBUR-TOCAY,

        Petitioner,

v.

IMMIGRATION AND NATURALIZATION
SERVICE and MATHEW M. SAXTON,

        Respondents.
_____/

Case No. 1:15-cv-1332

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

Juan Cubur-Tocay (sometimes referred to as "petitioner"), through his attorney, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, I recommend that the petition be denied.

**I.**    **Background**

Cubur-Tocay was charged in the Kent County (17th) Circuit Court with assault with a dangerous weapon (felonious assault), M.C.L. § 750.82.[1] *See* Docket sheet (ECF No. 7-1, PageID.126). The state court appointed him counsel, and on October 13, 2014, Cubur-Tocay entered a plea of no contest to the charge pursuant to a plea agreement. Plea Trans. (ECF No. 7-2, PageID.133-138). Sometime later, Cubur-Tocay retained Attorney Anthony Greene. On November 25, 2014, Attorney Greene filed a motion to withdraw the plea on the basis of ineffective assistance of counsel. *See* Docket Sheet at PageID.128; Motion (ECF No. 7-4,

---

[1] M.C.L. § 750.82(1) provides in pertinent part that "a person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $2,000.00, or both."

1

PageID.173-175). Cubur-Tocay stated the following facts in support of his motion. He is a citizen of Mexico and a permanent resident of the United States. His appointed counsel did not provide any information to his questions on "whether or not the plea would effect [sic] his immigration status." Prior to entering his no contest plea, he met with substitute counsel for the first time who provided no advice to him of the immigration consequences of his plea. At that time, Cubur-Tocay did not know that he had pled to an aggravated felony, a crime of moral turpitude, which would "subject him to arrest and mandatory detention and for which deportation is mandated". Cubur-Tocay further alleged that while the trial court issued "a brief warning at the time of the plea," this "should not be a substitute for advice that counsel is required to provide" and "did not cure the ineffective assistance of counsel by failing to provide advice to [him] of the immigration consequences of a plea." Motion at PageID.173-174. Cubur-Tocay asked the court to adjourn the sentencing scheduled for December 11, 2014, to hold an evidentiary hearing on the ineffective assistance, and to grant his motion to withdraw the plea. *Id*. at PageID.174.

The trial court heard the motion on December 5, 2014. *See* Motion Trans. (ECF No. 7-3). At that time, Attorney Greene argued that the trial judge's warning at the plea hearing was insufficient to cure the ineffective assistance of counsel under *Padilla v. Kentucky*, 559 U.S. 356 (2010). While counsel did not get much of an opportunity to develop an argument, this Court is aware of the *Padilla* decision, which stated in pertinent part:

> It is our responsibility under the Constitution to ensure that no criminal defendant—whether a citizen or not—is left to the "mercies of incompetent counsel." To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less.

*Padilla*, 559 U.S. at 374 (internal citation omitted).

Attorney Greene appeared to raise two claims related to the holding in *Padilla*: (1) that Cubur-Tocay's trial counsel was ineffective for failing to provide him with any advice regarding the risk of deportation; and, (2) that the trial court's questioning of Cubur-Tocay during the plea colloquy did not cure this error. In addressing the motion, the judge believed that his advice to Cubur-Tocay at the plea hearing was sufficient to establish that the plea was voluntary:

> THE COURT: Well, I'm establishing, pursuant to *Padilla*, that the Supreme Court came out with, that he needs to know that if he pled guilty to this, he could be deported. I'm the only judge that I'm aware of in this - - in this building, in this county, that specifically warns every single defendant at every single plea about, *Padilla*, that they could potentially be - - you know - - lose their right to be in this country if there's a conviction.
>
> MR. GREENE: I would like to read the quote for you. The Supreme Court made clear that negotiations for a plea bargain is a critical phase of litigation for purposes of a Sixth Amendment right to effective assistance of counsel. It also rejected the argument made by petitioner in this case that a knowing and voluntary plea supersedes errors by defense counsel - -
>
> THE COURT: You're talking about a knowing, voluntary plea. I'm talking here about he knew that he could be deported. And that's what *Padilla* talks about.
>
> MR. GREENE: He did not know that, Your Honor. A one - - a one-sentence - -
>
> THE COURT: All right. Anything else, briefly, counsel?
>
> MR. GREENE: Yes. A one-sentence warning at - - at the plea cannot wipe out all of the things that *Padilla* said that counsel must do. Counsel must research the potential consequences. They must advise of the potential consequences, and then they must use that information in their negotiations.
>
> THE COURT: Well, Mr. Green, you know, quite frankly, if he'd have stopped me at that time, - - and now his answer was yes. If he'd have said no, I want to talk to my client more (sic) about that, we wouldn't have proceeded.
>
> MR. GREENE: Well, that is, again, placing the onus on the defendant to understand that he - - his counsel has not done what the Supreme Court says his counsel must do.
>
> THE COURT: Ms. Eslinger [the prosecutor], do you have a position in this matter?

> MS. ESLINGER: No, Your Honor. We're leaving it to your discretion and review of the record.
>
> THE COURT: All right. Thank you. I'm going to deny it, counsel. I've - - I warned him. I think I've complied with *Padilla*. I think there's no basis to withdraw this plea. Thank you. Ms. Eslinger, if you would submit an order, please.

Motion Trans. at PageID.144. The trial court denied the motion in a written order entered that day. *See* Order (ECF No. 1-1, PageID.31).

On December 10, 2014, Cubur-Tocay, through counsel, filed an interlocutory appeal with the Michigan Court of Appeals asking that court to stay the proceedings to address three issues:

> I.   Plea colloquy warnings by the court does not cure ineffective assistance by defendant's attorney.
>
> II.  The defendant should be allowed to withdraw his plea because of ineffective assistance of counsel.
>
> III. The defendant was prejudiced by following the advice of his defense counsel.

Application for interlocutory appeal (ECF No. 7-4, PageID.154). The Michigan Court of Appeals denied the motion to stay and the application for leave to appeal because it was not persuaded "of the need for immediate appellate review." *People v. Cubur-Tocay*, No. 325002 (Order) (Mich. App. Dec. 10, 2014) (ECF No. 7-4, PageID.148).

On December 12, 2014, the trial court entered a sentence of judgment based upon the no contest plea, sentencing Cubur-Tocay to 243 days with restitution and fees totaling $4,786.00. Judgment (ECF No. 7-5, PageID.259).

On February 4, 2015, Cubur-Tocay, through counsel, filed an application for leave to appeal the order denying the interlocutory appeal to the Michigan Supreme Court, raising three similar issues:

4

  I. Does the plea colloquy warnings by the trial court cure the ineffective assistance by defendants' attorney?

  II. The defendant should have been allowed to withdraw his plea because of ineffective assistance of counsel.

  III. The defendant was prejudiced by following the advice of his defense counsel.

Application for leave (ECF No. 7-5, PageID.191-192). That court denied leave to appeal because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Cubur-Tocay*, No. 150984 (Order) (Mich. Sept. 16, 2015) (ECF No. 7-5, PageID.187).

  About three months later, Cubur-Tocay, through counsel, filed a form petition for habeas relief pursuant to 28 U.S.C. § 2254 in this Court. *See* Petition (ECF No. 1) (Dec. 23, 2015). The petition named the "Immigration and Naturalization Service" (ICE) and "Sheriff Matthew Saxton, Calhoun County Jail" as respondents. *Id*. at PageID.2. The petition stated that Cubur-Tocay was sentenced on December 12, 2014 to "eight months." *Id*. The petition also stated – incorrectly – that Cubur-Tocay filed "a direct appeal to the Michigan Court of Appeals from the judgment of conviction." PageID.3. There is no record that Cubur-Tocay filed an appeal or post-judgment motion contesting his conviction. As discussed, Cubur-Tocay filed only an interlocutory appeal from the order denying his motion to withdraw the plea. *See also*, *id*. at PageID.4. Finally, it appears that Cubur-Tocay was in ICE custody at that time counsel filed the habeas petition, based on the following response to a question regarding a future sentence:

> There is probation that the defendant would be on in state court. He was transferred to ICE custody after serving his jail time.

*Id*. at PageID.14.

  The habeas petition raised one issued:

> Ineffective assistance of counsel pursuant to Padilla v Kentucky, 559 US 356 [sic]. The defendant was not informed of the immigration consequences of the plea.

5

> The defendant was charged with felonious assault. He was appointed counsel by the court. The counsel recommended that the defendant plea to the charges. The counsel did not inform the defendant of the potential consequences as required by Padilla. At the plea colloqy [sic] the judge stated in one sentence, "Also, sir, if you are not an American citizen, this conviction could affect your ability to stay in the country. Do you understand that, sir?" Based on this statement the judge refused to allow the defendant to withdraw his no contest plea.

*Id*. at PageID.7. Respondent is represented by the Michigan Attorney General's Office and has filed an answer. Petitioner did not file a reply to the answer.

## II. Standard of review under 28 U.S.C. § 2254

At the time he filed the petition, Cubur-Tocay had served his 8-month prison sentence for felonious assault and may have been on probation. While Cubur-Tocay was apparently in ICE custody at the Calhoun County Jail, he has provided no information regarding his status (e.g., was he in custody awaiting a hearing or in custody awaiting deportation).[2] Based on his filings, Cubur-Tocay seeks relief from his state court conviction pursuant to 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Although Cubur-Tocay served his sentence, he could seek to have his conviction vacated to avoid collateral consequences. *See Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) ("[i]n recent decades, we have been willing to presume that a wrongful criminal conviction has continuing collateral consequences"). In this case, it appears that the collateral consequences of Cubur-Tocay's conviction included deportation.

---

[2] The Court notes that Cubur-Tocay is not contesting his detention by ICE, which is typically accomplished by filing a petition for habeas relief pursuant to 28 U.S.C. § 2241.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 101-102 (2011) (internal quotation marks omitted). The federal habeas statute "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559, U.S. 766, 773 (2010) (internal quotation marks and citations omitted). This deferential standard "requires petitioner to show 'the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing [Supreme Court precedent] beyond any possibility for fairminded disagreement.'" *Blackmon v. Booker*, 696 F.3d 536, 538 (6th Cir. 2012), quoting *Harrington*, 562 U.S. at 103.

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court

has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause of § 2254(d)(1), "a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id*. A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Finally, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

### III.    Exhaustion

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).[3] Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404

---

[3] The Court notes that respondent did not address exhaustion.

8

U.S. 270, 275-77 (1971), cited in *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.  Petitioner bears the burden of showing exhaustion.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  However, the district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts.  *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

Here, Cubur-Tocay filed this action pursuant to 28 U.S.C. § 2254 on the grounds that his no contest plea was involuntary due to ineffective assistance of trial counsel and that the trial judge erred by denying his motion to withdraw the plea.  While Cubur-Tocay filed an interlocutory appeal seeking to reverse the trial court's order denying the motion to withdraw the plea, a federal habeas action under § 2254 does not provide relief from such an order.  Rather, this statute provides a procedure to collaterally attack a state prisoner's conviction and sentence. As the Supreme Court instructed,

> A § 2254 petitioner is applying for something: His petition seeks *invalidation* (in whole or in part) of *the judgment* authorizing the prisoner's confinement.

*Magwood v. Patterson*, 561 U.S. 320, 332 (2010) (emphasis in original and internal quotation marks omitted).

Petitioner has not exhausted his state court remedies to invalidate the December 14, 2014 judgment.  Indeed, he has not taken any steps to appeal his conviction.  As a general rule, a

habeas petition containing unexhausted claims should be dismissed without prejudice. *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). A district court has the discretion to stay a mixed habeas petition containing both exhausted and unexhausted claims to allow the petitioner to present his unexhausted claims to the state court in the first instance. *See Rhines v. Weber*, 544 U.S. 269 (2005). However, the stay and abeyance procedure set forth in *Rhines* does not apply in this action, because petitioner did not file a "mixed" petition as contemplated in *Rhines*. Rather, he filed a petition consisting entirely of one unexhausted claim. The Court recognizes that dismissal of the petition may bar Cubur-Tocay from re-filing the habeas petition due to the expiration of the one-year statute of limitations. *See Clay v. Michigan*, No. 4:06-cv-153, 2009 WL 5171811 at *5 (W.D. Mich. Dec. 18, 2009) ("Courts have dismissed petitions comprised entirely of unexhausted claims under these circumstances, recognizing that dismissal of the petition in its entirety may bar the petitioner from re-filing the habeas petition."). In this instance, the Court will address the merits of the petition as allowed under 28 U.S.C. § 2254(b)(2), which provides that, "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."

## IV.    Discussion

Cubur-Tocay's petition raised three related issues: (1) did the trial court err in denying his motion to withdraw the plea; (2) was he prejudiced by following the advice of counsel to plead no contest; and, (3) did the trial court cure counsels' ineffective assistance by addressing deportation at the plea hearing.

### A.    Motion to withdraw plea

To the extent that Cubur-Tocay claims that the state judge improperly denied his motion to withdraw the guilty plea, such a claim is not cognizable on habeas corpus review because

a state criminal defendant has no constitutionally guaranteed right to withdraw a guilty plea. *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).

> The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969). A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas. *Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991). Consequently, the question whether petitioner should have been allowed in the court's discretion to withdraw his guilty plea under state court rules is not cognizable on habeas corpus review.

*Barnes v. Michigan Department of Corrections*, No. 1:17-cv-265, 2018 WL 718570 at *7 (Jan. 18, 2018), R&R adopted 2018 WL 1524057 (W.D. Mich. March 28, 2018), cert. of appeal. denied, No. 18-1410, 2018 WL 4899100 (6th Cir. July 17, 2018). Accordingly, that claim should be denied.

### B. Ineffective assistance of trial counsel

Cubur-Tocay contends that his trial counsel was consitutionally ineffective. "It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). As discussed, Cubur-Tocay pled no contest (or "nolo contendere") to the charges in No. 14669. Similar to a guilty plea, a nolo contendere plea admits every essential element of the offense and constitutes a waiver of the non-jurisdictional defects and "any claims not logically inconsistent with the issue of factual guilt." *United States v. Freed*, 688 F.2d 24, 25-26 (6th Cir. 1982). *See People v. New*, 427 Mich. 482, 493; 398 N.W.2d 358 (1986) ("[s]ince a plea of nolo contendere indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea") (footnote omitted). When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to

the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258 (1973). While a guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights, *see id.* at 267, such a plea does not bar claims that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974) or the validity of the plea itself, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (challenge to guilty plea on basis of ineffective assistance of counsel). Because Cubur-Tocay's claim does not challenge the power of the state to bring him into court, the only basis for challenging his conviction is to claim that his plea is invalid.

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill*, 474 U.S. at 56 (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of factual guilt. While courts may consider whether a factual basis for a guilty plea exists in their assessments of its validity, it has generally been held that the Constitution does not require that they ensure such a basis exists. *See Higgason v. Clark*, 984 F.2d 203, 208 (7th Cir. 1993) ("Strong evidence of guilt may suffice to sustain a conviction on an *Alford* plea, and may be essential under Fed. R. Crim. P. 11, but it is not necessary to comply with the Constitution") (internal quotation marks omitted).

In order to enter a constitutionally valid guilty plea, the defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312

U.S. 329, 334 (1941). The plea must be entered "voluntarily." It must not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750. In other words, "[a] guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." *Machibroda v. United States*, 368 U.S. 487, 493 (1962). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).

Finally, the advice of competent counsel must be made available to the defendant. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Thus, ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Here, Cubur-Tocay contends that his plea was not voluntary because he received ineffective assistance of counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to

require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690.  Under *Strickland*, the reviewing court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Id*. at 689-690.  "Surmounting *Strickland's* high bar is never an easy task." *Padilla*, 559 U.S. at 371.

Under the first prong of the *Strickland* test, the court considers whether counsel's performance was deficient.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.  "In this regard, the court will 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir.  1994) (quoting *Strickland*, 466 U.S. at 689).

Under the second prong of the *Strickland* test, the court determines whether counsel's deficient performance was prejudicial.  "[A]ctual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693.  To establish prejudice in the guilty plea context, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult," because "[t]he standards created by *Strickland* and § 2254(d) are both

'highly deferential', and when the two apply in tandem, review is 'doubly' so[.]" *Harrington*, 562 U.S. at 105 (internal citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but rather "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

Here, Cubur-Tocay supported his ineffective assistance claim by signing a 15-paragraph affidavit. Rather than summarize the affidavit, the Court will set forth the contents of the affidavit in its entirety:

> NOW COMES Juan Valentin Cubur-Tocay, being duly sworn, deposes and says as follows:
>
> 1. On 8/16/14 Juan Valentin Cubur-Tocay was charged with assault with a dangerous weapon.
>
> 2. He was appointed the services of Donald Pebley to represent him in this matter.
>
> 3. Mr. Pebley never discussed possible immigration consequences with Juan Valentin Cubur Tocay.
>
> 4. At the defendant's status conference his attorney was not present and a different attorney was standing in for him.
>
> 5. At the status conference Juan Valentin Cubur-Tocay only had a few minutes to talk to the new attorney.
>
> 6. Juan Valentin Cubur-Tocay asked the attorney if his plea would effect [sic] his immigration status.
>
> 7. The attorney standing in told Juan Valentin Cubur-Tocay that he did not know anything about immigration. That this court would not deal with immigration.
>
> 8. Juan Valentin Cubur-Tocay's attorney never informed Juan Valentin Cubur-Tocay of the immigration consequences of entering a no contest plea to the charge.
>
> 9. His attorney was aware that Juan Valentin Cubur-Tocay is an immigrant from Guatemala, yet he never advised him on matters relating to immigration consequences.
>
> 10. Juan Valentin Cubur-Tocay was advised by his attorney that it would be in his best interest to plead no contest to the charges.

    11. After Juan Valentin Cubur-Tocay pled no contest to the charges, he was telling his sister what had happened and she became concerned about her brother's immigration status.

    12. Juan Valentin Cubur-Tocay's sister set up an appointment with Immigration Attorney Richard Kessler.

    13. Mr. Kessler informed Juan Valentin Cubur-Tocay that his plea to the charge would result in him being placed into immigration removal proceedings and would result in him facing mandatory deportation.

    14. Mr. Kessler also informed Juan Valentin Cubur-Tocay that his plea of no contest to the charge would be treated as a plea of guilty by the immigration judge.

    15. If Juan Valentin Cubur-Tocay had been informed by his attorney of the negative immigration consequences of the plea he would not have entered the plea of no contest to the charge.

    16. Juan Valentin Cubur-Tocay has resided in this country since 1990 and is a permanent resident with a green card.

Further this affiant sayeth not.

    Dated 12-01-2014        [/s/] Juan Valentin Cubur-Tocay

Affidavit (ECF No. 7-4, PageID.169-171).

    The facts set forth in the affidavit demonstrate that counsel was deficient for purposes of the first prong of the *Strickland* test.  In *Padilla*, the Supreme Court held "that counsel must inform her client whether his plea carries a risk of deportation." *Padilla*, 559 U.S. at 374. Here, the claim of ineffective assistance appears directed at both Mr. Pebley (the attorney who represented petitioner initially) and Mr. Milanowski (the attorney who represented petitioner at the plea hearing).[4]  In ¶ 3, Cubur-Tocay stated that "Mr. Pebley never discussed possible immigration consequences with [him]."  In ¶¶ 6-7, Cubur-Tocay admitted that he did discuss possible immigration consequences with a new attorney, i.e., he asked the attorney if the plea would affect

---

[4] It appears that the "new attorney" referenced by Cubur-Tocay is Attorney James M. Milanowski, the attorney who represented him at the plea hearing.  *See* Plea Trans. (ECF No. 7-2).

his immigration status, to which the attorney replied "that he did not know anything about immigration" and "[t]hat this court would not deal with immigration."  In short, while Cubur-Tocay was aware that there could be immigration consequences, his attorneys could not identify those consequences.  Based on this record, neither of petitioner's attorneys performed their duty under *Padilla*, because neither informed Cubur-Tocay that his plea carried a risk of deportation.

Next, Cubur-Tocay must establish prejudice as required under the second prong of the *Strickland* test, i.e., whether "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  To establish prejudice, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372.  Here, Cubur-Tocay addressed this issue in his affidavit, stating that if he "had been informed by his attorney of the negative immigration consequences of the plea he would not have entered the plea of no contest to the charge".  Affidavit at PageID.170-171.  Given the draconian sanction of deportation, it is understandable that Cubur-Tocay now claims that he would not have entered the no contest plea. However, petitioner has failed to show that a decision to reject the plea bargain would have been rational under the circumstances.

First, Cubur-Tocay did not have a defense to the charged crime.  The police report of the incident which served as the factual basis for Cubur-Tocay's no contest plea stated that he assaulted an individual with a box cutter and "cut the other individual." Plea Trans. at PageID.136. Cubur-Tocay pled no contest because he was intoxicated at the time.  *Id*. at PageID.134. Intoxication is not a defense. *See* M.C.L. § 768.37(1) ("Except as provided in subsection (2) [not applicable here], it is not a defense to any crime that the defendant was, at that time, under the influence of or impaired by a voluntarily and knowingly consumed alcoholic liquor . . ."). Second,

17

the victim suffered injuries and financial damages arising from the assault. As discussed, Cubur-Tocay's plea was based upon the police report that established that he assaulted an individual with a box cutter and cut that individual. Plea at PageID.136. In this regard, the state court ordered Cubur-Tocay to pay the victim restitution in the amount of $4,188.00. *See* Judg. (ECF No. 7-5, PageID.259). Evidence of these injuries could have been presented to a jury to establish the extent of the assault and Cubur-Tocay's intent to injure the victim with the box cutter. Third, under the plea agreement, Cubur-Tocay received a no contest plea "with a sentence within the appropriately scored Guidelines," which the government estimated to be a minimum sentence of 0 to 2 months and a maximum sentence of 17 months. Plea Trans. at PageID.135. While the sentencing transcript is not available, the docket sheet reflects that the prosecutor recommended a sentence of 2 to 17 months, *see* Docket Sheet (ECF No. 7-1, PageID.126), a recommendation well below the maximum sentence of 4 years, *see* Plea Trans. at PageID.134.

In summary, Cubur-Tocay was facing a possible 4-year prison sentence for the charge of assault with a dangerous weapon, had no defense to that charge, and had a victim who sustained injuries which were severe enough to claim over $4,000.00 in restitution. Based on this record, Cubur-Tocay has not convinced the Court that a decision to reject the plea bargain with a possible sentence of only two months in jail would have been rational under the circumstances. Accordingly, the Court should deny the ineffective assistance claim for lack of prejudice.[5] For all of these reasons, the Court concludes that Cubur-Tocay's plea was voluntary and that his habeas petition should be denied.

---

[5] Because petitioner did not show prejudice, it is unnecessary for the Court to address the third issue raised in the petition, i.e., whether the trial court cured counsels' ineffective assistance by addressing deportation at the plea hearing.

## V. Recommendation

Accordingly, I respectfully recommend that the habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  June 13, 2019                              /s/ Ray Kent
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).